# | Gratz *against* The Farmers' Bank.

An advancement, by a junior mortgagee, of a judgment debt to a creditor, who also holds a judgment against another, as surety therefor, is a final satisfaction of the latter judgment where the principal's estate suffices to repay the advance.   The advancing creditor is, therefore, not entitled to an assignment of such security.

ERROR to the district court of *Lancaster* county.

This was an action on the case by Simon Gratz, Hyman Gratz and Jacob Gratz against The Farmers' Bank of Lancaster.

Simon Gratz and Brothers, the plaintiffs, had a mortgage dated the 10th of October 1817, on a house and lot in the city of Lancaster, which was given to them by Samuel White, to secure the payment of the sum of 11,360 dollars.   The Farmers' Bank of Lancaster held a judgment, entered on the 24th of April 1815, against Samuel White, in the court of common pleas of Lancaster county, which was a prior lien on the same premises, and a lien on the other estates of the defendant.   The bank had levied on these premises by virtue of a *fieri facias*, issued on this judgment, and had issued a *venditioni exponas* to compel a sale, for the purpose of making the debt, which with its interest, amounted to 1827 dollars 49 cents, on the 18th of February 1820; when the plaintiffs paid that debt to the bank, and thereby arrested the proceedings.

For the securing of the said debt, the Farmers' Bank of Lancaster held also a judgment entered on the same day, against Henry Slaymaker, which was a lien on a considerable real estate, owned by him. On this judgment, satisfaction was acknowledged the 24th of June 1822, by John Eberman, cashier of the bank.

The plantiffs in this suit claimed the amount, thus paid, from the bank; first, on the ground of a special contract, by which, as they alleged, the bank agreed, in consideration that they would purchase a debt of 1827 dollars 49 cents, due from Samuel White and Henry

[Gratz v. The Farmers' Bank.]

Slaymaker, that the bank would assign, transfer and set over to the plaintiffs, all the securities which they (the bank) held for the payment of the same, when they should be thereunto afterwards requested; and averring that they paid that sum to the bank, who held; for security of this debt, the two judgments before mentioned; they further averred that the bank, by force of the said contract, were bound in law and justice, and ought to have assigned, transferred and set over to the plaintiffs, the said two judgments when they should be thereunto afterwards requested; and should have permitted them, the said plaintiffs, to use the said judgments, in such a manner as to secure the payment to them of the said sum of 1827 dollars 49 cents; yet the said bank, "although often requested," have not assigned, transferred and set over the said judgments, or either of them, but have refused to do so; and have refused to permit the plaintiffs to use them, or either of them, so as to secure the payment to them of the said sum; and also, that the bank, by force of their contract aforesaid, were bound to do, and ought to have done, no act whereby the plaintiffs' right and title to the said two judgments, or either of them, would have been in anywise interfered with or disturbed. Yet the bank, in direct violation and fraud of their contract and agreement so as aforesaid made, did, on the 24th of June 1822, receive from Henry Slaymaker, for themselves, and to their own use, the amount due upon the judgment against him as aforesaid; and entered satisfaction on the record of the same, whereby the right and title of the plaintiffs to the said judgment was wholly defeated, and the said sum of 1827 dollars 49 cents, was wholly lost to them, &c.

The second ground of the plaintiffs' claim was for money had and received on the 24th of June 1822, by the bank, to and for the use of the plaintiffs, which the bank refused to pay to them.

The facts did not sustain the allegations of the special contract. No such agreement was proved, nor any stipulation by the bank to assign, transfer and set over the two judgments mentioned. No special request to the bank to assign was proved.

Neither was the fact alleged in the special breach of the second count proved: namely, that the bank received from Henry Slaymaker the sum of 1827 dollars 49 cents, on the 24th of June 1822; but it was on the contrary shown that nothing was received from him in satisfaction of his judgment.

The court below (Hays, President) was of opinion that the plaintiffs were not entitled to recover, and so instructed the jury, who found accordingly.

*Montgomery* and *Norris,* for plaintiffs in error.
· *Jenkins,* for defendant in error.

The opinion of the Court was delivered by
Gibson, C. J.—It is sufficient for the occasion to determine the

[Gratz v. The Farmers' Bank.]

plaintiffs' right on general principles, without regard to the declaration, or variance in the proof. By advancing the amount of the debt, they acquired a right to be substituted for the bank with the benefit of its securities; and the extent of its responsibility to them may be measured by the extent of its former recourse on the judgment against Slaymaker, and the extent of its recourse to the property of White, qualified as it was by the equity which the plaintiffs themselves derived from their mortgage. It appears from the testimony of the cashier, in reference to a statement furnished to the plaintiffs' attorney, that White was the principal debtor and Slaymaker but a surety; aud that the bank consequently had but a contingent right of recourse to the latter. But it indisputably appears that White's estate was more than sufficient for the debt, as the plaintiffs received from the proceeds of the part mortgaged, a sum equal to what they had advanced, beside a considerable surplus applicable to their mortgage. The advancement of the debt by the plaintiffs, therefore, was final satisfaction of the judgment against Slaymaker, to whom neither the plaintiffs nor the bank could recur while satisfaction might be had of the principal; consequently the formal acknowledgement of satisfaction could prejudice no one. In fact, the representatives of Slaymaker were entitled to demand it; and the bank would have exposed itself to a statutory penalty had it disregarded the request which, it appears, they actually made. In this particular, therefore, the plaintiffs have no room for complaint. What then would have been the value to them of an actual assignment of the judgment against White? They might, perhaps, have applied it in ease of their mortgage to other property, and have thus given their specific lien a preference. It appears that White had, in fact, other real estate; but whether the judgment could have been thrown upon it, though *prima facie* it would seem that it might, does not conclusively appear; nor is it necessary to inquire, for it is altogether certain that it was as available in their hands without actual assignment as with it. They might, with the same ease, have had execution of it and directed its application; and had the bank attempted to interfere, the court would have been bound to restrain it. This principle was determined in Fleming *v.* Beaver, on full consideration; it is indeed an indispensable means of enabling us to exercise a very valuable branch of equity jurisdiction. If, then, the plaintiffs have suffered from an injudicious application of their securities, the bank is not answerable for it. Even as the matter stands, they are exactly in the condition in which they would have been, had they not paid the debt to procure the ownership of the judgment.

Judgment affirmed.